**QUAD–CITY BUILDERS ASSOCIA-TION, Inc., Plaintiff,**

v.

**TRI–CITY BRICKLAYERS UNION NO. 7, AFL–CIO, et al., Defendants.**

Civ. No. 3–772–D.

United States District Court
S. D. Iowa,
Davenport Division.

July 10, 1969.

**1032**

Charles Rehling, Davenport, Iowa and Charles Lindberg, Cincinnati, Ohio, for Quad-City Builders Ass'n.

Marvin S. Andich, Rock Island, Ill., Law Firm of Woll & Mayer, Washington, D.C., for Tri-City Bricklayers Union.

Dennis Eslick, Chicago, Ill., for Quad-City Ass'n of Mason Contractors.

## MEMORANDUM OPINION

STEPHENSON, Chief Judge.

This matter is before the Court on the motion of plaintiff Quad-City Builders Association, Inc. (hereinafter referred to as the "Builders Association") for summary judgment. The defendants, Tri-City Bricklayers Union No. 7, AFL–CIO (hereinafter referred to as the "Union") and the Quad-City Association of Mason Contractors (hereinafter referred to as the "Mason Contractors"), have likewise filed motions for summary judgment. Numerous briefs have been filed and the motions were argued orally before the Court on May 21, 1969, by counsel for the respective parties. In addition a number of depositions, affidavits, and pleadings have been filed and reviewed by the Court. The motions, therefore, are properly before the Court for disposition.

This is an action based on alleged violations of § 302(a) (c) of the Labor-Management Relations Act of 1947 (hereinafter referred to as the "Act"), 29 U.S.C.A. § 186. Jurisdiction is conferred upon this Court by virtue of § 302(e) of the Act. See Memorandum and Order filed herein on June 17, 1968. The material facts of the controversy are not in dispute, and it appears the matter is appropriate for disposition by summary judgment.

The plaintiff Builders Association is a non-profit corporation formed by general contractors engaged in the building and construction industry in Scott County, Iowa, and Rock Island County, Illinois. One of the functions of the Builders Association is to negotiate on behalf of its members collective bargaining agreements with labor organizations representing employees of the member general contractors.

In 1967 the Builders Association and the defendant Union entered into and executed a new collective bargaining agreement. This agreement provided, in

part, that each employer member of the Builders Association would as of May 1, 1967, "pay into a Mutually Agreeable Trust Fund, to be established for health and welfare benefits, a sum equal to 15¢ per hour for each hour worked by his bricklayer employees."

During this period of time negotiations were likewise taking place between the Mason Contractors and the Union. These negotiations resulted in a collective bargaining agreement and an Agreement and Declaration of Trust, to become effective May 1, 1967, which created a trust for health and welfare benefits for members of the Union. Under the provisions of this Trust, it is to be administered by three trustees selected by the Union and three trustees selected by the Mason Contractors. The trustees appointed by the Union were defendants Prahl, Neyrinck and Fest, and the trustees appointed by the Mason Contractors were defendants Marolf, Brandt and Flaatten. The defendant Robert Meese is the administrative assistant and agent of the trustees.

Subsequent to the execution of the contract with the Builders Association, the Union insisted that the "Mutually Agreeable Trust Fund," to which the Builders Association members under their collective bargaining contract should make health and welfare payments was the Trust Fund established by the Union and the Mason Contractors. The Builders Association resisted this demand and the funds were placed in escrow pending agreement. Finally, on January 24, 1968, the Builders Association, under protest, agreed to the Union-Mason Contractors Trust Fund as the "Mutually Agreeable Trust Fund" to which payment should be made, and on that same date instituted this action.

By this action the Builders Association seeks a declaratory judgment, and remedial orders in connection therewith, that the Trust Fund established by the Union and the Mason Contractors, known as the Tri-City Bricklayers Local Union No. 7 Welfare Fund, has been established and is being administered in violation of § 302(c) (5) (B) of the Act, 29 U.S.C.A. § 186(c) (5) (B), which requires that "employees and employers are equally represented in the administration of such fund, * * *." The Builders Association contends that the Trust Fund does not comply with this requirement because one of the three "employer" representative trustees is a member of the Union and a majority of the members of the Mason Contractors, who have the sole power to appoint and remove "employer" representative trustees, are also members of the Union. Furthermore, the members of the Mason Contractors who are likewise members of the Union have been allowed to participate in and receive the health and welfare benefits furnished by the Trust Fund.

Generally, § 302(a) and (b) of the Act, 29 U.S.C.A. § 186(a) and (b), prohibits both payments by an employer to a representative of employees and the acceptance of such payments.[1] The only exceptions to the broad prohibition of § 302(a) and (b) are listed in § 302(c); 29 U.S.C.A. § 186(c). The pertinent provision thereof, § 302(c) (5) (B), 29 U.S.C.A. § 186(c) (5) (B), provides as follows:

"(c) The provisions of this section shall not be applicable * * * (5)

---

1. Section 302 of the Labor Management Relations Act, 29 U.S.C.A. § 186, reads as follows:

(a) It shall be unlawful for any employer or association of employers or any person who acts as a labor relations expert, adviser, or consultant to an employer or who acts in the interest of an employer to pay, lend, or deliver, or agree to pay, lend, or deliver, any money or other thing of value—

(1) to any representative of any of his employees who are employed in an industry affecting commerce; or

* * * * *

(b) (1) It shall be unlawful for any person to request, demand, receive, or accept, or agree to receive or accept, any payment, loan, or delivery of any money or other thing of value prohibited by subsection (a) of this section.

with respect to money or other thing of value paid to a trust fund established by such representative, for the sole and exclusive benefit of the employees of such employer, and their families and dependents (or of such employees, families, and dependents jointly with the employees of other employers making similar payments and their families and dependents): * * * (B) the detailed basis on which such payments are to be made is specified in a written agreement with the employer, and employees and employers are equally represented in the administration of such fund, together with such neutral persons as the representatives of the employers and the representatives of the employees may agree upon and in the event the employer and employee groups deadlock on the administration of such fund and there are no neutral persons empowered to break such deadlock, such agreement provides that the two groups shall agree on an impartial umpire to decide such dispute, or in event of their failure to agree within a reasonable length of time, an impartial umpire to decide such dispute shall, on petition of either group, be appointed by the district court of the United States for the district where the trust fund has its principal office, and shall also contain provisions for an annual audit of the trust fund, a statement of the results of which shall be available for inspection by interested persons at the principal office of the trust fund and at such other places as may be designated in such written agreement; * * *."

Payments to a trust fund of the type here under consideration have been held to be violative of § 302(a), 29 U.S.C.A. 186(a), if such fund does not completely and fully meet the requirements of § 302(c) (5) (B), 29 U.S.C.A. 186(c) (5) (B). Local No. 2 of Operative Plasterers & Cement Masons International As-

soc. v. Paramount Plastering, Inc., 310 F.2d 179 (9th Cir. 1962), cert. denied 372 U.S. 944, 83 S.Ct. 935, 9 L.Ed.2d 969 (1963); see generally Annot., 88 A.L.R. 2d 493 (1963). Section 302(e), 29 U.S. C.A. § 186(e),[2] gives this Court specific jurisdiction to restrain violations of § 302(a), 29 U.S.C.A. § 186(e), and, in doing so, the Court must in effect render a declaratory judgment as requested by the Builders Association as to the validity of the trust fund under § 302.

Section 302 was enacted by Congress "as part of a comprehensive revision of federal labor policy in the light of experience acquired during the years following passage of the Wagner Act, and was aimed at practices which Congress considered inimical to the integrity of the collective bargaining process." Arroyo v. United States, 359 U.S. 419, 425, 79 S.Ct. 864, 868, 3 L.Ed.2d 915 (1959). The Court noted further that Congress was particularly concerned "with the possible abuse by union officers of the power which they might achieve if welfare funds were left to their sole control." Arroyo v. United States, *supra* at 426, 79 S.Ct. at 868. It is for this reason that Congress set specific standards and requirements on trust funds that were to be exempt from the prohibition of § 302(a), 29 U.S.C.A. § 186(a). The intent of § 302 is set out clearly in Employing Plasterers' Ass'n, etc. v. Journeymen, etc., 279 F.2d 92, 97 (7th Cir. 1960), as follows:

"Section 302 is aimed primarily at the prevention of possible abuse and not at providing a remedy for abuse actually perpetrated. To that end the section declares that the payment and acceptance of employer contributions to employee welfare funds between employers and 'representatives' of employees, respectively, shall be unlawful unless certain safeguards are observed in the administration of the welfare funds. Section 302(e) provides the

2. "(e) The district courts of the United States and the United States courts of the Territories and possessions shall have

jurisdiction, for cause shown, * * * to restrain violations of this section * * *."

civil remedy of injunction to restrain violations of the section; that is, to restrain payment or acceptance of employer contributions to welfare funds that do not meet the statutory safeguards in their administration. Where it is established that payment and acceptance is between employers and 'representatives' of employees, the issue in a suit for injunction becomes the legality of the welfare funds as measured by the statutory standards of administration."

The Court went on to point out, Employing Plasterers' Ass'n v. Journeymen, etc., *supra*, as follows:

"Employers have a statutory duty to refrain from making welfare fund contributions to 'representatives' of their employees unless the funds are administered as the statute provides. They are also charged with certain duties in the administration of such welfare funds to which they contribute. They must be a party to the written agreement which specifies the basis on which their contributions are to be made, and they are to share equally in the administration of the funds held in trust."

■ The sole ground of non-compliance complained of by the Builders Association in the present situation is that the employers do not have equal representation with the Union in the administration of the fund. It is undisputed that a majority of the members of the Mason Contractors are members of the Union or are operated by principals who are such members. The "Employer Representative Trustees" serve at the sole discretion of such members. The Mason Contractors appointed its present three trustees at a meeting at which six of the nine persons in attendance were members of the Union, and one of the appointed trustees, defendant Flaatten, is likewise a Union member. These members of the Mason Contractors who are also Union members have been allowed to personally contribute and to be eligible for the health and welfare benefits of the Trust Fund.[3] They, likewise, have paid their dues, attended meetings, and, at least in the case of defendant Flaatten, paid fines to the Union when dues payments have been in arrears. Furthermore, as members of the Union, the members of the Mason Contractors are subject to the Constitution and By Laws of the Union, including the disciplinary provisions thereof.

Considering all the facts of this case, the Court is compelled to hold that this Trust Fund fails to meet the equal representation requirement of § 302(c) (5) (B), 29 U.S.C.A. § 186(c) (5) (B). Under the present circumstances Union domination of the Trust Fund is a very real possibility. Inherent in such domination is the possibility of abuse which § 302 was enacted to prevent. The statutory standard of equal representation under § 302 is a requirement placed upon the parties by law, and to permit the Union "in any degree" to participate in the choice of employer representations violates this specific standard. Local No. 688, International Bro. of Teamsters v. Townsend, 345 F. 2d 77, 79 (8th Cir. 1965); Blassie v. Kroger, 345 F.2d 58, 72 (8th Cir. 1965). It cannot be denied that the Union holds power and influence over its members, and, although such has not yet occurred, it may be used to influence the Mason Contractors in their selection of and actions as employer representatives.

In an attempt to show that the members of the Mason Contractors are not subject to Union control, the defendants have submitted an affidavit of Thomas Murphy, President of the Masons and Plasterers' International Union of America. This affidavit states that un-

3. Prior to February 4, 1969, the Union members of the Mason Contractors apparently contributed to the Trust Fund for all hours worked, regardless of their status. On that date, however, the Mason Contractors passed a resolution that contributions by a contractor for his own work "as an employee" are to be based solely on the hours worked "as an employee."

der the International's power to interpret "customs and usages," contractors are not considered by the International as subject to "discipline" for actions as employers. This exception, however, is not provided for in the Constitution of the Union, and such interpretation could easily be withdrawn. Furthermore, Mr. Murphy notes the fluid position of contractors as both employers and employees. Due to the nature of the trade a contractor may be an employer one day and an employee the next, or simultaneously be an employer and employee. Thus, even if the Union was unable to discipline or control a mason contractor in his position as an employer, it could exercise control over him in his capacity as an employee. By controlling the status of contractors as employees, and the rights and privileges inherent therewith, the Union could likewise influence their actions as employers.

This holding should not be interpreted to mean that the Mason Contractors may not negotiate with the Union and participate in a proper trust fund under § 302 (c), 29 U.S.C.A. § 186(c). In their capacity as employers they may of course, do so. Those who retain their Union membership, however, may not participate in the selection of employer representative trustees to such funds. To allow Union members to select employer representatives does not meet the equal representation requirement of § 302(c) (5) (B), 29 U.S.C.A. § 186(c) (5) (B), and payments thereto will be in violation of § 302(a), 29 U.S.C.A. § 186(a).

For all the above reasons the motion of the Builders Association for summary judgment will be granted. The plaintiff will be granted twenty days within which to submit a form of judgment in accordance with this opinion. Copies likewise should be delivered to counsel for all the parties and any objections to the form thereof submitted to the Court within ten days thereafter.

It is ordered that the motion of the plaintiff Quad-City Builders Association for summary judgment be and is hereby granted.

It is further ordered that the motions of defendants Tri-City Bricklayers Union No. 7, AFL–CIO and Quad-City Association of Mason Contractors for summary judgment be and are hereby denied.

It is further ordered that the plaintiff Quad-City Builders Association, Inc., submit to the Court within twenty days a form of judgment to be entered herein. The defendants will have ten days thereafter within which to object to the form thereof.