**MOBILE MECHANICAL CONTRAC-
TORS ASSOCIATION, INC.,
Plaintiff,**

v.

**Edward J. CARLOUGH et al.,
Defendants.**

**Civ. A. No. 74-409-H.**

United States District Court,
S. D. Alabama, S. D.

Oct. 11, 1974.

Willis C. Darby, Jr., Mobile, Ala., for plaintiff.

Roderick P. Stout, Mobile, Ala., for defendants.

## OPINION

HAND, District Judge.

This is an action for declaratory and injunctive relief under the provisions of Section 302 of the Labor Management Relations Act of 1947, as amended, 29 U.S.C. § 186. The declaratory relief sought rests on the provisions of 28 U.S.C. §§ 2201 and 2202, under jurisdiction conferred by Section 302(e).[1]

Plaintiff Mobile Mechanical Contractors Association, Inc. (Mechanical Contractors) filed on October 1, 1974, a complaint and a motion for preliminary injunction. This cause came to be heard on the motion of Mechanical Contractors for a preliminary injunction pursuant to an order entered by this court on October 1, 1974, and the court having continued the hearing from October 4, 1974, to October 8, 1974, at the request of the defendants.

The court has considered the verified complaint, material offered in evidence, stipulations of parties, testimony of witnesses in open court, and the arguments of counsel.

Mechanical Contractors is an association which represents certain employers for the purposes of collective bargaining with certain unions, including Sheet Metal Workers International Association Local Union #441 (Sheet Metal Workers Local 441).

Since July 16, 1974, the defendant Sheet Metal Workers Local 441 has engaged in a strike against employers represented by Mechanical Contractors and other employers for the purpose of collective bargaining; the strike begun on July 16, 1974, is still in progress.

The evidence is overwhelming that the defendants, individually and in concert, have requested and demanded that Mechanical Contractors agree on behalf of employers which it represents to pay money to the National Stabilization Agreement of the Sheet Metal Industry Trust Fund (SASMI).

The evidence is overwhelming that the sole object of the strike now is to force Mechanical Contractors and other employers to agree to pay money to SASMI.

█ The issue raised by the requests and demands of the defendants, and the strike for SASMI, is whether SASMI is properly established, administered, and maintained under the requirements of Section 302. If SASMI does not meet the requirements of Section 302, the requests and demands of the defendants and the strike for SASMI are unlawful.[2]

---

1. Section 302(e) provides,

(e) The district courts of the United States and the United States courts of the Territories and possessions shall have jurisdiction, for cause shown, and subject to the provisions of section 17 (relating to notice to opposite party) of the Act entitled "An Act to supplement existing laws against unlawful restraints and monopolies, and for other purposes", approved October 15, 1974, as amended (U.S.C., title 28, sec. 381), to restrain violations of this section, without regard to the provisions of sections 6 and 20 of such Act of October 15, 1914, as amended (U.S.C., title 15, sec. 17, and title 29, sec. 52), and the provisions of the Act entitled "An Act to amend the Judicial Code and to define and limit the jurisdiction of courts sitting in equity, and for other purposes." ·

2. Section 302 provides in part:

(a) It shall be unlawful for any employer or association of employers . . . to pay, . . . or agree to pay . . . any money . . .

(1) to any representative of any of his employers who are employed in an industry affecting commerce; or

(2) to any labor organization, or any officer or employee thereof, which represents, seeks to represent, or would admit to membership, any of the employees of such employer who are employed in an industry affecting commerce.

\*　　　\*　　　\*　　　\*　　　\*

(b) It shall be unlawful for any person to request, demand, receive, or accept, or agree to receive or accept, any payment . . . of any money . . . prohibited by subsection (a) of this section.

The evidence is overwhelming that SASMI does not comply with the requirements of Section 302 that "employers and employees . . . [be] equally represented in the administration of such fund."

It is abundantly clear from the Agreement and Declaration of Trust Establishing The National Stabilization Agreement Of Sheet Metal Industry Trust Fund (1973 Trust Agreement) and the testimony of defendants' expert witness that the General President of the Sheet Metal Workers International Association (International Association), a position now occupied by defendant Carlough, has the continuing unfettered right to remove and replace any or all union trustees and that no employer has any right to participate in removal or replacement or as a matter practice the appointment of employer trustees. It is uncontroverted that Mechanical Contractors has neither the right to select nor to remove nor to replace nor the right to participate in the selection, removal or replacement of any employer trustee.

ARTICLE III, Section 1, of the 1973 Trust Agreement provides,

Section 1. UNION AND EMPLOYER TRUSTEES. The operation and administration of the Fund shall be the joint responsibility of One Trustee appointed by the Employers and One Trustee appointed by the International Union. The number of Trustees may be changed from time to time but there shall always be an equal number of Employer and Union Trustees.

The union trustee can prevent the appointment of any further employer trustees by refusing to agree to increase in equal number the union trustees.

ARTICLE III, Section 5 of the 1973 Trust Agreement provides,

Section 5. FORM OF NOTIFICATION. In case a Union Trustee shall be removed, replaced, or succeeded, a statement in writing by the Secretary-Treasurer of said International Union shall be sufficient written evidence of the action taken by the General President of the International Union; a statement in writing signed by a majority of the then remaining Employer Trustees shall be deemed sufficient evidence of any action taken with respect to the removal or replacement of an Employer Trustee. Any resignation by a Trustee shall be by Certified or Registered Mail addressed to the Office of the Fund.

The defendant, Carlough as General President of the International Association, has the continuing right to remove and replace any union trustee; *no* employers have the right to remove or replace any employer trustee.

ARTICLE III, Section 6 of the 1973 Trust Agreement provides,

Section 6. DESIGNATION OF EMPLOYER TRUSTEES BY EMPLOYER PARTIES. Any Employer who is or may become a party to this Agreement and Declaration of Trust agrees irrevocably to designate as its representative in the operation and administration of the Fund such Trustees as are named in said Agreement and Declaration of Trust as Employer Trustees, together with their successors selected in the manner provided herein, and agrees to be bound by all the actions taken by the said Employer Trustees pursuant to this Agreement and Declaration of Trust.

Thus, no employer, except employers who participated in the initial establishment of SASMI, may participate in the selection of any employer trustee; by contrast, the International Association retains such a right to remove and select union trustees from time to time.

From the evidence and statements made in connection with the hearing of this cause it appears that the number of Trustees under the trust agreement was increased from the original one each to two each. Mr. Carlough, under the general powers contained in the agreement appointed an additional Trustee for the Union. Contrary to the powers contained in the trust agreement, Mr. Mc-

Kenzie appointed an additional trustee for the employers. This leaves serious room to believe that the increase in the number of Trustees can be so manipulated by the union president whereby he could control the majority of Trustees by simply refusing to agree to an increase in the number of Trustees unless he approved the person advanced by Mr. McKenzie, the "employer trustee". This may not be the present vice, but it is not far from the realm of the probably.

This court is amazed that the 1973 Trust Agreement has such systematic *unequal* representation of employers and employees.

It is also to be noted from the evidence in this case that though the International insisted that SASMI be included in the demands of Local 441, no one for the International ever did the courtesy of explaining to Mr. Rettig, local business agent, what SASMI was or meant or required or would do. Even though negotiations were undertaken, still in August Mr. Rettig knew nothing about SASMI and had to make inquiry of the International to provide him with some information or send him someone who could explain it to him, his members and the employers. It is greatly understandable why the membership was not permitted to consider this or even vote upon it as to whether they really wanted SASMI as a part of their contract and such high-handed treatment of Mr. Rettig and the members of Local 441 is repreprehensible. As indicated, it was not until October when Mr. Rettig appeared in this Court that he was ever provided with a copy of the SASMI trust agreement. It is also passing strange that even then it was the plaintiffs' attorneys who made a copy available to Mr. Rettig, not the International.

This court views with some surprise the fact that SASMI has been established, administered, and maintained with so little regard for the purposes of Section 302. As the Supreme Court emphasized in United States v. Arroyo, 359 U.S. 419, 79 S.Ct. 864, 3 L.Ed.2d 915 (1959),

> Those members of Congress who supported the amendment were concerned with corruption of collective bargaining through bribery of employee representatives by employers, with extortion by employee representatives, and with the possible abuse by union officers of the power which they might achieve if welfare funds were left to their sole control. Congressional attention was focussed particularly upon the latter problem . . . (footnotes omitted) 359 U.S. at 425–426, 79 S.Ct. at 868.

The disproportionate representation on the part of the International Association as compared to that of the employers in general and Mechanical Contractors in particular raises a very real possibility of union domination of SASMI by the International Association.[3]

As the Court of Appeals quoted in Quad City Builders Association v. Tri City Bricklayers Union No. 7 AFL-CIO, 431 F.2d 999 (8th Cir. 1970),

> Considering all the facts of this case, the Court is compelled to hold that this Trust Fund fails to meet the equal representation requirement of § 302(c)(5)(B), 29 U.S.C.A. § 186(c)(5)(B). Under the present circumstances Union domination of the Trust Fund is a very real possibility. Inherent in such domination is the possibility of abuse which § 302 was enacted to prevent. The statutory standard of equal representation under § 302 is a requirement placed upon the parties by law, and to permit the Union 'in any degree' to participate in the choice of employer representations violates this specific standard. Local No. 688, International

---

3. This court notes, but does not rely upon the facts that the same attorney, Mr. Donald Fisher, represents both SASMI and the International Association; and that SASMI apparently is located in the same building as the International Association. See Blassie v. Kroger Co., 345 F.2d 58, 76 (8th Cir. 1965).

Brotherhood of Teamsters v. Townsend, 345 F.2d 77, 79 (8th Cir. 1965); Blassie v. Kroger Co., 345 F.2d 58, 72 (8th Cir. 1965). 302 F.Supp. 1031, 1035.

■ This court is mindful of the factors to be considered in determining whether preliminary injunctive relief is appropriate: (1) whether the plaintiff is likely to prevail on the merits; (2) whether the plaintiff is in danger of suffering irreparable harm; (3) whether the potential harm to the defendant from issuance of the injunction outweighs the possible harm to the plaintiff if injunctive relief is denied; (4) whether issuance of a preliminary injunction will serve the public interest.

■ Under the circumstances of this case, and the overwhelming weight of the evidence it appears that Mechanical Contractors is likely ultimately to prevail on the merits; that Mechanical Contractors has suffered, is suffering, and would otherwise suffer irreparable harm; that the harm to Mechanical Contractors from denial of injunctive relief would substantially exceed the harm to defendants from issuance of such relief; and that issuance of a preliminary injunction will serve the public interest. See Illinois Central Railroad Co. v. Brotherhood of Locomotive Firemen and Enginemen, 332 F.2d 850 (7th Cir. 1964), cert. denied, 379 U.S. 932, 85 S. Ct. 331, 13 L.Ed.2d 343.

The court having considered the verified complaint and having heard evidence in open court, makes the following

## FINDINGS OF FACT

1. Jurisdiction of this action is conferred on this court by Section 302(e) of the Labor Management Relations Act of 1947, as amended, U.S.C. Title 29, § 186(e).

2. Plaintiff is engaged in representing certain of its employer members for the purpose of collective bargaining with Sheet Metal Workers Local 441.

3. Defendant Carlough is, and has been at all times material hereto, the general president of International Association, and a trustee of SASMI.

4. Defendant Doby is, and has been at all times material hereto, an agent and employee of the International Association and Sheet Metal Workers Local 441.

5. Defendant Hinkle is, and has been at all times material hereto, an employee and agent of the International Association and an agent of Sheet Metal Workers Local 441.

6. Defendant McKenzie is, and has been at all times material hereto, a trustee of SASMI.

7. Defendant Falvella is, and has been at all times material hereto, administrator of SASMI.

8. Defendant International Association (a) is an unincorporated association, (b) is a labor organization, and (c) is engaged in this judicial district in representing employees in the construction industry.

9. Defendant Sheet Metal Workers Local 441 (a) is an unincorporated association, (b) is a labor organization, and (c) is engaged in this judicial district in representing employees in the construction industry.

10. Air Conditioning Engineers, Inc. (a) is engaged in the construction industry, and (b) has designated Mechanical Contractors as its representative for the purposes of collective bargaining with Sheet Metal Workers Local 441.

11. Climatic Engineers, Incorporated (a) is engaged in the construction industry, and (b) has designated Mechanical Contractors as its representative for the purposes of collective bargaining with Sheet Metal Workers Local 441.

12. Coast Corporation (a) is engaged in the construction industry, and (b) has designated Mechanical Contractors as its representative for the purposes of collective bargaining with Sheet Metal Workers Local 441.

13. Mobile Refrigeration Company (a) is engaged in the construction industry, and (b) has designated Mechani-

cal Contractors as its representative for the purposes of collective bargaining with Sheet Metal Workers Local 441.

14. The SASMI 1973 Trust Agreement was, according to the declaration of trust, executed in "San Fransico (sic), California" on May 21, 1973 by Carlough for the International Association and Charles Andrews who signed the declaration separately as "President, Sheet Metal Contractors Association of San Fransico (sic), Inc." and separately as "President, Valley Sheet Metal Co., Inc."

15. According to the SASMI 1973 Trust Agreement, on May 21, 1973 Carlough on behalf of the International Association appointed himself the "Union Trustee" of SASMI under the SASMI 1973 Trust Agreement.

16. According to the SASMI 1973 Trust Agreement, Charles Andrews, without any indication of the capacity in which he acted, appointed McKenzie the "Employer Trustee" under the SASMI 1973 Trust Agreement.

17. The signatures on the acceptance of the Trustees are attached to the SASMI 1973 Trust Agreement in the following manner:

### ACCEPTANCE

We, the undersigned, do hereby agree to serve as Trustees in accordance with said Trust Agreement. We have read the said Trust Agreement, fully understand the contents thereof and agree to comply with all its terms and provisions.

FOR UNION:

Name  S/ Edward J. Carlough

   Position: General President

   Address: 1750 New York Ave., N.W.
          Washington, D.C. 20006

Name _____

   Position: _____

   Address: _____

Name _____

   Position: _____

   Address: _____

FOR EMPLOYER:

Name  S/A. Bruce McKenzie

   Position: _____

   Address: 147 Tiburon Blvd.
       San Rafael, California
          94901

Name _____

   Position: _____

   Address: _____

Name _____

   Position: _____

   Address: _____

18. C. A. Rettig, Business Manager of Sheet Metal Workers Local 441, saw a copy of the executed 1973 Trust Agreement establishing SASMI for the first time while on the witness stand on October 8, 1974; this copy was incomplete in that it did not have the attachments referred to therein.

19. Air Conditioning Engineers, Inc., Climatic Engineers, Incorporated, Coast Corporation, and Mobile Refrigeration Company and other employers represented by Mechanical Contractors for the purpose of bargaining with Sheet Metal Workers Local 441 were parties to a collective bargaining agreement which became effective on July 16, 1972 and which provides that it will "remain in full force and effect through July 15, 1974. . . . unless written notice of reopening is given" and provides that "this Agreement shall continue in force and effect until conferences relating thereto have been terminated by either party."

20. Sheet Metal Workers Local 441 gave timely notice on reopening.

21. Conferences between the collective bargaining committees of Mechanical Contractors and Sheet Metal Workers Local 441 commenced on June 17, 1974, and have not been terminated.

22. The members of Sheet Metal Workers Local 441 have never had an opportunity to vote as to whether SASMI would be included in their collective bargaining agreement.

23. Sheet Metal Workers Local 441 is now insisting and has since June 17, 1974 been insisting, that employers represented by Mechanical Contractors agree to contribute money to SASMI as a prerequisite to a new collective bargaining agreement to become effective as of July 16, 1974, between Sheet Metal Workers Local 441 and Mechanical Contractors.

24. Sheet Metal Workers Local 441 is now demanding, and has since June 17, 1974, been demanding, that Mechanical Contractors appoint McKenzie as the Trustee for Mechanical Contractors under the SASMI 1973 Trust Agreement.

25. On July 16, 1974, Carlough, C. A. Rettig, Doby, Hinkle, Falvella, International Association and Sheet Metal Workers Local 441 caused employees represented by Sheet Metal Workers Local 441 to commence a strike against Air Conditioning Engineers, Inc., Climatic Engineers, Incorporated, Coast Corporation, and Mobile Refrigeration Company and other employers.

26. The strike of Sheet Metal Workers Local 441 which commenced on July 16, 1974, is still in progress.

27. An object of the strike by Sheet Metal Workers Local 441 from its inception was, and still is, to force and require employers represented by Mechanical Contractors and other employers to agree to participate in SASMI.

28. Participation in SASMI by employers represented by Mechanical Contractors and other employers requires (a) agreement to pay money to SASMI, and (b) appointment of McKenzie as the trustee of such employers under the SASMI 1973 Trust Agreement.

29. The credible evidence is overwhelming that the sole object of the strike by Sheet Metal Workers Local 441 since August 14, 1974 is to force and require Mechanical Contractors, employers represented by Mechanical Contractors, and other employers to (a) agree to pay money to SASMI, and (b) appoint McKenzie as the trustee of such employers under the SASMI 1973 Trust Agreement.

30. The SASMI 1973 Trust Agreement establishes different methods for the selection and removal of Employer Trustees than the SASMI 1973 Trust Agreement establishes for the selection and removal of Union Trustees.

31. The SASMI 1973 Trust Agreement fails to provide for equal representation of employers and employees in the administration of SASMI.

32. The General President of the International Association has a continuing right under the SASMI 1973 Trust Agreement to remove and replace union trustees; no employer or group of employers has an equivalent right to remove and replace employer trustees.

33. The General President of the International Association can prevent the appointment of any further employer trustees by refusing an increase in the number of trustees.

34. Mechanical Contractors could never participate in the selection of employer trustees while the International Association retains the right to remove and select union trustees at any time and from time to time.

35. The SASMI 1973 Trust Agreement does not specify in writing the detailed basis on which payments are to be made to or from SASMI.

36. The SASMI 1973 Trust Agreement does not provide for the participation of Mechanical Contractors in the selection of neutral persons or an impartial umpire to resolve deadlocks in the administration of SASMI.

37. The SASMI 1973 Trust Agreement apparently provides benefits for purposes which do not come within the stated permissible purposes of Section 302(c) of the Labor Management Relations Act of 1947, as amended, U.S.C. Title 29, §. 186(c).

38. The strike by Sheet Metal Workers Local 441 has caused a curtailment of the operations of Air Conditioning Engineers, Inc., Climatic Engineers, Incorporated, Coast Corporation, Mobile Refrigeration Company and other employers in the states of Alabama, Florida and Mississippi; has caused Air Conditioning Engineers, Inc., Climatic Engineers, Incorporated, Coast Corporation, and Mobile Refrigeration Company and other employers immediate and irreparable injuries, loss and damage; and if allowed to continue will continue to cause Air Conditioning Engineers, Inc., Climatic Engineers, Incorporated, Coast Corporation, and Mobile Refrigeration Company and other employers immediate and irreparable injuries, loss and damage.

39. Mechanical Contractors, Air Conditioning Engineers, Inc., Climatic Engineers, Coast Corporation, Mobile Refrigeration Company, and other employers engaged in commerce will suffer more from the denial of injunctive relief than would Edward J. Carlough, K. C. Doby, Jimmy A. Hinkle, A. Bruce McKenzie, John R. Falvella, International Association and Sheet Metal Workers Local 441, or any of them, from the granting of injunctive relief.

On the basis of the foregoing findings of fact, the court makes the following

## CONCLUSIONS OF LAW

1. Jurisdiction of this action is conferred on this court by Section 302(e) of the Labor Management Relations Act of 1947, as amended, U.S.C. Title 29, § 186(e).

2. Mechanical Contractors is an employer as defined in Section 2(2) of the Labor Management Relations Act, as amended, U.S.C. Title 29, § 152(2).

3. Defendant Carlough is a representative of employees within the meaning of Section 302 of the Labor Management Relations Act of 1947, as amended, U.S.C. Title 29, § 186.

4. Defendant Doby is a representative of employees within the meaning of Section 302 of the Labor Management Relations Act of 1947, as amended, U.S.C. Title 29, § 186.

5. Defendant Hinkle is a representative of employees within the meaning of Section 302 of the Labor Management Relations Act of 1947, as amended, U.S.C. Title 29, § 186.

6. Defendant International Association (a) is a labor organization within the meaning of Section 2(5) of the National Labor Relations Act, as amended, U.S.C., Title 29, § 152(5); (b) is engaged in this judicial district in representing employees in an industry affecting commerce as defined in Section 2(7) of the National Labor Relations Act, as amended, U.S.C., Title 29, § 152(7); and (c) is a representative of employees within the meaning of Section 302 of the Labor Management Relations Act of 1947, as amended, U.S.C. Title 29, § 186.

7. Defendant Sheet Metal Workers Local 441 is (a) a labor organization within the meaning of Section 2(5) of the National Labor Relations Act, as amended, U.S.C., Title 29, § 152(5); (b) engaged in this judicial district in representing employees in an industry affecting commerce as defined in Section 2(7) of the National Labor Relations Act, as amended, U.S.C., Title 29, § 152(7); and (c) is a representative of employees within the meaning of Section 302 of the Labor Management Relations Act of 1947, as amended, U.S.C. Title 29, § 186.

8. Air Conditioning Engineers, Inc. is (a) an employer as defined in Section 2(2) of the National Labor Relations Act, as amended U.S.C., Title 29, § 152(2); (b) engaged in commerce within the meaning of Section 2(6) of the National Labor Relations Act, as

amended, U.S.C., Title 29, § 152(6); and (c) engaged in an industry affecting commerce within the meaning of Section 2(7) of the National Labor Relations Act, as amended, U.S.C. Title 29, § 152(7).

9. Climatic Engineers, Incorporated is (a) an employer as defined in Section 2(2) of the National Labor Relations Act, as amended, U.S.C., Title 29, § 152(2); (b) engaged in commerce within the meaning of Section 2(6) of the National Labor Relations Act, as amended, U.S.C., Title 29, § 152(6); and (c) engaged in an industry affecting commerce within the meaning of Section 2(7) of the National Labor Relations Act, as amended, U.S.C. Title 29, § 152(7).

10. Coast Corporation is (a) an employer as defined in Section 2(2) of the National Labor Relations Act, as amended, U.S.C., Title 29, § 152(2); (b) engaged in commerce within the meaning of Section 2(6) of the National Labor Relations Act, as amended, U.S.C., Title 29, § 152(6); and (c) engaged in an industry affecting commerce within the meaning of Section 2(7) of the National Labor Relations Act, as amended, U.S.C. Title 29, § 152(7).

11. Mobile Refrigeration Company is (a) an employer as defined in Section 2(2) of the National Labor Relations Act, as amended, U.S.C., Title 29, § 152(2); (b) engaged in commerce within the meaning of Section 2(6) of the National Labor Relations Act, as amended, U.S.C., Title 29, § 152(6); and (c) engaged in an industry affecting commerce within the meaning of Section 2(7) of the National Labor Relations Act, as amended, U.S.C. Title 29, § 152(7).

12. The employees of Air Conditioning Engineers, Inc., Climatic Engineers, Incorporated, Coast Corporation, and Mobile Refrigeration Company and other employers represented by Mechanical Contractors for the purpose of bargaining with Sheet Metal Workers Local 441 and employees of Daniel Construction Company of Alabama are employed in an industry affecting commerce within the meaning of Section 302 of the Labor Management Relations Act of 1947, as amended, U.S.C. Title 29, § 186.

13. SASMI is a representative of employees who are employed in an industry affecting commerce, and is administered at least in part by employee trustees who are representatives of employees who are employed in an industry affecting commerce within the meaning of Section 302 of the Labor Management Relations Act of 1947, as amended, U.S. C. Title 29, § 186.

14. SASMI does not meet the requirements of Section 302(c) of the Labor Management Relations Act of 1947, as amended, U.S.C. Title 29, § 186(c).

15. Carlough, Doby, Hinkle, Falvella, International Association and Sheet Metal Workers Local 441 since on or before July 15, 1974, have acted individually and in concert:

(a) to request, demand, force and require that the Mechanical Contractors agree on behalf of employers represented by Mechanical Contractors to pay and deliver money to SASMI and Carlough, as trustee of SASMI;

(b) to request and demand that Air Conditioning Engineers, Inc., Climatic Engineers, Incorporated, Coast Corporation, and Mobile Refrigeration Company and other employers engaged in commerce agree to pay and deliver money to SASMI and Carlough, as trustee of SASMI;

all in violation of Section 302 of the Labor Management Relations Act of 1947, as amended, U.S.C. Title 29, § 186.

16. Mechanical Contractors, Air Conditioning Engineers, Inc., Climatic Engineers, Incorporated, Coast Corporation, and Mobile Refrigeration Company have no adequate remedy at law.

17. The insistence of the International, and through them the Local, that SASMI be incorporated in any bargaining between the Local and the employers has so permeated negotiations between the Local and the employers that it is

relatively impossible, if not totally impossible, to carve out this issue from the present demands of the Union in regard to consummation of a new contract. SASMI is illegal, and to continue to insist on its inclusion in any further bargaining constitutes a coercion by the Union or an attempted coercion by the Union to compel the employers to commit an illegal act. Good faith efforts in settling the claimed areas of dispute must go forward without any overt or covert effort to further insist upon the inclusion of SASMI as a point of dispute or a point to be included in the contract.

Pending hearing on the merits, any evidence presented to this Court indicating that SASMI is still the product cause of a failure to agree can and will require a finding by this Court that SASMI is and was the sole issue that is the product cause of the present strike and call for an expansion of the confines of the injunction hereinafter stated.

## ORDER ON PRELIMINARY INJUNCTION

In accordance with the Findings of Facts and Conclusions of Law entered by this Court on the 11th day of October, 1974, it appears to the Court after due deliberation that Edward J. Carlough, K. C. Doby, Jimmy A. Hinkle, John R. Falvella, Sheet Metal Workers International Association, and Sheet Metal Workers International Association Local Union #441 are actually engaged in committing and will continue to commit the acts set forth in said Findings of Facts and Conclusions of Law, it is, therefore,

Ordered that Edward J. Carlough, K. C. Doby, Jimmy A. Hinkle, Sheet Metal Workers International Association, and Sheet Metal Workers International Association Local Union #441, their agents, servants, employees, members and attorneys and all persons in active concert or participation with them be, and they hereby are, restrained and enjoined, pending the determination of this action, from:

(a) requesting, demanding, forcing or requiring Mobile Mechanical Contractors Association, Inc. to agree on behalf of employers which it represents to pay and deliver money to the National Stabilization Agreement of the Sheet Metal Industry Trust Fund;

(b) requesting and demanding that Air Conditioning Engineers, Inc., Climatic Engineers, Incorporated, Coast Corporation, and Mobile Refrigeration Company and any other employer whose employees are represented by Sheet Metal Workers Local #441 to pay and deliver money to the National Stabilization Agreement of the Sheet Metal Industry Trust Fund;

(c) continuing the current strike against Air Conditioning Engineers, Inc., Climatic Engineers, Incorporated, Coast Corporation, and Mobile Refrigeration Company and any other employer whose employees are represented by Sheet Metal Workers Local #441 as a means for insisting upon or requiring that these parties include SASMI in any contract between them;

(d) engaging in any strike, work stoppage, or refusal to report to work for Air Conditioning Engineers, Inc., Climatic Engineers, Incorporated, Coast Corporation, Mobile Refrigeration Company and any other employer whose employees are represented by the Sheet Metal Workers Local #441, or any of them, where the purpose of the strike, work stoppage, or refusal to report to work is to coerce the Mobile Mechanical Contractors Association, Inc., or Air Conditioning Engineers, Inc., Climatic Engineers, Incorporated, Coast Corporation, or Mobile Refrigeration Company and other employers whose employees are represented by Sheet Metal Workers Local #441, or any of them, to pay, lend, or deliver, or agree to pay, lend, or deliver any money or other thing of value to the National Stabilization Agreement of the Sheet Metal Industry Trust Fund;

(e) having determined that the National Stabilization Agreement of the

Sheet Metal Industry Trust Fund is an illegal trust, the Sheet Metal Workers International Association, its agents, servants, employees, officers, members and attorneys and all persons in active concert or participation with them are directed to forthwith instruct and direct the Sheet Metal Workers International Association Local Union #441 that they are not to and must not require, insist, direct or attempt to require, insist or direct that SASMI be included in any negotiations looking towards the settlement of the present labor dispute now outstanding between said Local # 441 and the employers represented by Mechanical Contractors Association, Inc. and any other employers whose employees are represented by said Local #441.

This preliminary injunction is granted on the condition that an undertaking in the amount of $5000.00 be filed for the payment of such costs and damages as may be incurred or suffered by any party who is found to be wrongfully enjoined, such undertaking to be approved by the Court or by the Clerk of this Court.