**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**LOCAL 964, UNITED BROTHERHOOD OF CARPENTERS AND JOINERS OF AMERICA, AFL–CIO, Respondent.**

No. 808, Docket 35598.

United States Court of Appeals, Second Circuit.

Argued May 12, 1971.

Decided Aug. 30, 1971.

Leonard Wagman, Atty., N. L. R. B. (Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Frank H. Itkin, William J. Avrutis, Attys., N. L. R. B., on the brief), for petitioner.

William M. Mulderig, New City, N. Y. (Mulderig & O'Connor, New City, N. Y., on the brief), for respondent.

Before FRIENDLY, Chief Judge, WATERMAN, and HAYS, Circuit Judges.

HAYS, Circuit Judge:

For fifteen years prior to June 30, 1968, the respondent union and the charging party, Contractors and Suppliers Association of Rockland County, New York, Inc., a corporation made up of employers engaged in the construction industry in Rockland County, had collective bargaining agreements covering the hiring of carpenters in Rockland County.

The collective agreement between the charging party and the union contained provisions setting up a trust fund for the benefit of union members with an equal number of trustees designated by the employers and by the union. A controversy arose in December 1967 between the employer and union trustees and the charging party filed suit against the union trustees charging maladministration of the trust fund.

After the filing of the lawsuit, agents of the union began to inform members of the charging party that they would experience problems in obtaining carpenters if they remained with the charging party and did not bargain through the

Rockland County Carpenter Contractors Association, a recently formed group similar to the charging party. Negotiation for a new contract between the charging party and the union began in April 1968; the union made it clear, however, that no agreement would be reached until the charging party abandoned the litigation against the union's trustees. On July 1, 1968, all employers were struck by the union, but a new contract was concluded on July 5 with the Carpenter Contractors Association. The union refused to conclude an agreement with the charging party on the same terms and urged charging party members to sign individual agreements on terms similar to those included in the contract with the Carpenter Contractors Association. Within a few weeks all the members of the charging party who employed carpenters signed the individual contracts in order to obtain the carpenters needed to resume work.

The Board found that the union had violated Section 8(b) (3) of the National Labor Relations Act, 29 U.S.C. § 158(b) (3) (1964), by insisting upon non-mandatory subjects of bargaining as a condition of reaching an agreement and by refusing to bargain in good faith. The Board also found that the union violated Sections 8(b) (1) (B) and 8(b) (3) of the Act, 29 U.S.C. §§ 158(b) (1) (B) and (b) (3) (1964), by coercing charging party members in the choice of their representatives for collective bargaining. In its remedial order, the Board required the union to cease and desist from giving effect to the individual contracts, and to offer to the charging party substantially the same contract as had been offered individually to its members with the exception of terms relating to the trust funds. The Board ordered the union to refund contributions to contractual trust funds made by charging party members under the individual contracts if differences over the trust funds were not resolved

within sixty days. We grant enforcement of the Board's order in full.

### I.

■ There is ample evidence on the record to support the Board's finding that the union violated Sections 8(b) (1) (B) and 8(b) (3) of the Act by restraining and coercing employer-members of the charging party in the selection of their representative for the purposes of collective bargaining. We have held that the "right of employees and the corresponding right of employers, see section 8(b) (1) (B) * * * to choose whomever they wish to represent them in formal labor negotiations is fundamental to the statutory scheme." General Electric Co. v. N. L. R. B., 412 F.2d 512, 516 (2d Cir. 1969). The uncontradicted evidence shows that union representatives threatened several charging party members with trouble if they did not leave the charging party and bargain through the Carpenter Contractors Association. These members did in fact experience difficulty in recruiting needed carpenters from the union's hiring hall until they signed separate contracts with the union. Union representatives told one charging party member that "[i]t would be wise if [he] signed an agreement with the * * * Carpenters Association because * * * [the charging party] was going to have a lot of labor trouble" and told another that "You are in the wrong organization. * * * " On this undisputed record, the Board reasonably concluded that the union threatened and coerced employers in the selection of their bargaining representative in violation of Sections 8(b) (1) (B) and 8(b) (3) of the Act.

### II.

■ The Board's finding that the union failed and refused to bargain in good faith with the charging party in violation of Section 8(b) (3) [1] of the

---

1. The Board's brief also cites Section 8(b) (1) (B) as having been violated by the failure to bargain in good faith. This is apparently an error of the draftsman since in this respect the brief does not accurately reflect the Board's order.

Act is also supported by substantial evidence. The conduct of the union in violation of Section 8(b) (1) (B) in coercing charging party members to abandon multi-employer bargaining through their Association is evidence of a fixed intention not to enter into an agreement with the charging party in violation of Section 8(b) (3) of the Act. The union's conduct at bargaining sessions, especially its summary rejection of the charging party's proposals after there had been complete capitulation on the major issue of wages, further shows a determination to frustrate collective bargaining and avoid reaching an agreement. The union insisted as a condition of agreement that the charging party abandon its litigation respecting the management of the trust fund and that only employers of carpenters act as employer trustees of the trust funds. The Board's classification of these terms as outside the scope of required bargaining as to "wages, hours, and other terms and conditions of employment" is within its discretionary power. See Local Union No. 189, Amalgamated Meat Cutters & Butcher Workmen of North America, AFL–CIO v. Jewel Tea Co., Inc., 381 U.S. 676, 685–686, 85 S.Ct. 1596, 1599, 14 L.Ed.2d 640 (1965). The union's insistence upon these two non-mandatory subjects violated Section 8(b) (3), since "such conduct is, in substance, a refusal to bargain about the subjects that are within the scope of mandatory bargaining." N. L. R. B. v. Wooster Division of Borg-Warner Corp., 356 U.S. 342, 349, 78 S.Ct. 718, 723, 2 L.Ed.2d 823 (1958).

### III.

■ Turning to the remedial provisions of the Board's order, we grant enforcement of the order to cease and desist from the practices described above as violations of the Act. In addition, we grant enforcement of the Board's order to cease giving effect to the individual contracts concluded with members of the charging party, since these contracts were forced upon the members by union conduct in violation of Sections 8(b) (1) (B) and 8(b) (3) of the Act.

We also grant enforcement of that part of the Board's order which requires the union to offer to the charging party the same contract that was concluded with the individual members (except for provisions relating to the trust funds and to the industry advancement fund). Respondent argues that this part of the Board's order is contrary to the Supreme Court's recent decision in H. K. Porter Co., Inc. v. N. L. R. B., 397 U.S. 99, 102, 90 S.Ct. 821, 25 L.Ed.2d 146 (1970), holding that the Board is "without power to compel a company or a union to agree to any substantive contractual provision of a collective-bargaining agreement." However, unlike the situation in *Porter* where the employer was directed to include in the contract a provision upon which no agreement had been reached, here the respondent union *offered* to the charging party's members individually and subsequently *executed* individual contracts with the same substantive terms as the contract which the Board has ordered the union to offer to the charging party. The Board's order does not "compel * * * a union to agree to any substantive term of a collective-bargaining agreement" to which it has not already agreed.

Finally, we grant enforcement of that part of the Board's order which requires the union, if there is no agreement within 60 days, to refund to the charging party's members with interest all contributions which they were required to make after July 19, 1968 to trust funds under their individual contracts, and to refund with interest to members of the charging party all monies which they were required to contribute under their individual contracts to the industry advancement fund.